IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03033-KLM

MICHELLE CAGWIN, DAVID CAGWIN, EDC, HJC and CEC are natural persons,
who are minors and the children of Michelle and David Cagwin,

      Plaintiffs,

v.

CENTRALIZED SHOWING SERVICE INC. (n/k/a SHOWINGTIME.COM), and
JANE DOE,

      Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Defendant Centralized Showing Service, Inc.'s Motion for Partial Summary Judgment** [#31][1] (the "Motion"), which seeks judgment as a matter of law on Plaintiff's Deceptive Trade Practices/Consumer Protection Act ("CCPA") and Third-Party Beneficiary of Contract claims.[2]   The case arises from the burglary of Plaintiff's house while it was listed for sale, by a criminal who obtained access to the key in the lockbox of the house from instructions provided by Defendant Centralized Showing Service, Inc. ("CSS").   *See, e.g., Compl.* [#4].   While the claims are discussed

---

[1]   "[#31]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).   This convention is used throughout this Order.

[2]   Plaintiff also asserts a claim for negligence, but that claim is not at issue in the Motion [#31].

in more detail in Section III, Plaintiffs generally assert that CSS represented that its services were of a particular quality, including being secure and safe, when in fact they were not.   *Id*.   The Court has reviewed the Motion [#31], the Response [#35], the Reply [#36], the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#31] is **GRANTED**.

## I.  Material Facts

Unless otherwise noted, the facts set forth below are deemed to be undisputed. The Court has generally cited to the evidence in support of a fact only when the fact is disputed.   Defendant's exhibits are referred to by letter, e.g., Ex. A, and Plaintiffs' exhibits are referred to by number, e.g., Ex. 1.   While the Court has considered all of the well-pled facts, it has not discussed every fact.   The Court also notes that the parties have denied certain factual assertions on grounds of evidentiary inadmissibility, such as irrelevance or immateriality.   This does not, however, constitute a proper denial of a fact. *See* KLM Civil Motions Practice Standards [#21] Section III.B.   Instead, a denial of a factual assertion must be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to admissible evidence in the record supporting the denial.   *Id.*   To the extent that a party's denials of the opposing party's facts do not meet this requirement, they are deemed admitted.

## A.    Defendant's Facts

CSS is a listing and remote showing service for properties listed by real estate agents for sale through CSS.   On average, CSS conducts over a million showings per year in Colorado's Security Level 1 market.[3]

On or around May 4, 2019, Plaintiffs owned and lived in a single-family house at 6228 S. Boston Court, Englewood, Colorado (the "Boston House").   On or before May 4, 2019, Plaintiffs hired a listing broker by the name of William Swartz based on his reputation, not his use of CSS, to list the Boston House for sale.   Mr. Swartz is neither an agent nor employee of CSS and is not otherwise authorized to make representations on behalf of CSS.

Homesmart Realty Group, the entity that Mr. Swartz is affiliated with, has an enrollment agreement ("contract") with CSS to list properties for showing at a certain rate. Homesmart Realty is not an employee or agent of CSS.   Plaintiffs never signed any agreement or contract with CSS directly, or any agreement about using CSS related to their use of Mr. Swartz's services.

Defendant asserts that at an unknown time on May 4, 2019, a criminal called CSS impersonating a real estate agent named Clifford Johnson and asked CSS for instructions to access the Boston House.   *Mot.* [#31] (citing Ex. B, Faherty Aff. ¶ 16; Ex. C, Lockbox Access Log at 1).   Plaintiff denies that the criminal called at an unknown time, citing evidence that the criminal called CSS at 4:39 p.m.   *Resp.* [#35] , Ex. 1, CSS 107. Further, Plaintiff accurately notes that the criminal did not "impersonate" Mr. Johnson as

---

[3]   A Security Level 1 market requires that real estate agents provide their name and showing code prior to receiving the showing instruction which provides access to the property.   *Mot.* [#31], Ex B, Faherty Aff. ¶2.

the caller was a female.   *Id*. Defendant states in its Reply [#36], and the Court agrees, that it is immaterial for purposes of the Motion [#31] whether the caller was impersonating Mr. Johnson or representing that they were calling on behalf of "Clifford Johnson."   *See id*. at 2.

According to Defendant, a showing code was provided by CSS and was then used by criminals to burglarize the Boston House.   *Mot.* [#31], Ex. B, Faherty Aff. ¶ 16. Plaintiff denies this only as to the reference to a "showing code," correctly noting that based on CSS' own affidavit (*id*.), the "showing code" is the unique code the real estate agent must give to obtain the lock box information.   CSS did not give a "showing code" to the caller/criminal; instead, CSS gave the caller/criminal a "showing instruction."   *Id*. This is, however, immaterial to the Motion [#31].

Plaintiff David Cagwin had never seen CSS marketing materials prior to his deposition.   Mr. Cagwin's knowledge of CSS came only from information received from his wife. Plaintiff Michelle Cagwin had never seen CSS marketing materials prior to the subject incident, and could not remember seeing the disclosed CSS marketing document at issue prior to her deposition.

Defendant asserts that prior to the incident, Ms. Cagwin's information about CSS, to the extent she had any, came solely from what Mr. Swartz told her.   *Mot.* [#313], Ex. E, Michelle Cagwin Dep. at 22:20-23.   Plaintiffs deny this, stating that Ms. Cagwin also received information from CSS via text message.   *Resp.* [#35], Ex. 2, CAGWIN 2. However, as Defendant points out in reply, Plaintiffs' denial is immaterial and does not create a genuine issue of material fact as to this issue.   Plaintiffs cite to text messages

that only contain appointment confirmations that Ms. Cagwin received, *id.*, but confirmations are not what is at issue in this case.   The evidence cited by Plaintiffs does not dispute Ms. Cagwin's testimony cited by Defendant.

According to Defendant, Plaintiffs continued to use CSS to manage showings of the Boston Home after the burglary and through the sale.   *Mot.* [#31], Ex. A, David Cagwin Dep. at 81:5-22; Ex. C, page 1.   Plaintiffs deny this, asserting that the cited deposition testimony does not establish this fact.   They assert that David Cagwin merely testified that he had not seen a particular document before.   *Id*.   The Court finds that Plaintiffs' denial is not accurate, as Mr. Cagwin testified that the record he was shown indicates that CSS continued to provide access to the property after the subject incident. *Id*.   Plaintiffs further assert that after the incident, real estate agent William Swartz managed showings by being present for each showing and checking IDs of the agents who entered the home.   *Resp.* [#35], Ex. 3, Swartz Aff. ¶ 8.   This does not, however, create a genuine issue of material fact as to Defendant's assertion that Plaintiffs continued to use CSS to manage showings of the property through the date of sale.

Defendant asserts that Plaintiffs relied on Mr. Swartz's representations that he would be present at future showings of their house, not on CSS's statements, to ensure safety of their property.   *Mot.* [#31]. Ex. A, David Cagwin Dep. at 65:15-25.   Plaintiffs deny that the deposition citation establishes reliance of the Plaintiffs on representations by Mr. Swartz.   They further deny that information about the safety of Plaintiffs' home following the incident is a material fact.   Plaintiffs note that David Cagwin testified that he raised the issue of CSS's role in the burglary with Mr. Swartz, and he agreed to be present

at the home for future showings.   *Id.*   Defendant asserts in reply, and the Court agrees, that Plaintiffs' denial is immaterial. The undisputed fact is that the continued use of CSS by Plaintiffs after the incident had nothing to do with CSS's statements.

**B.   Plaintiff's Additional Facts[4]**

Plaintiffs assert that CSS represented to the public at large on its website that its system "**automatically** identifies the agent calling and the CSR [Customer Service Representative] verifies they have the correct account to ensure that **only** authorized real estate agents can conduct showings on CSS listings."   Ex. 4 (emphasis added). Defendant states in response that it is undisputed that Plaintiffs never saw Exhibit 4, an undisclosed, undated, archived webpage from 2016 which appears to have been only recently accessed, prior to retaining Mr. Swartz as their broker.   As discussed in Section I.A., *supra*, neither Plaintiff had seen CSS marketing materials prior to the incident at issue or this litigation.

CSS represented on its website that "[a]ll changes [to a real estate agent's account] are tracked, recorded and stored for future reference."   *Resp.* [#35], Ex. 4. CSS also represented on its website that "[e]nhanced safety and security for agents and sellers" was a benefit of using its service.   *Id.,* Ex. 5.   Further, CSS advertised the many

---

[4]   Defendant has objected to and denied many of Plaintiffs' facts as supported by inadmissible hearsay.   *See Reply* [#36] at 3-7.   The Court must examine the record in the light most favorable to Plaintiff, and will assume for purposes of summary judgment only that the statements in the evidence submitted by Plaintiffs are not inadmissible hearsay.   *See Thomas v. Intern. Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995).   The Court finds that this is appropriate as it is not always clear whether the exhibits at issue are inadmissible hearsay, *see id.,* and Plaintiffs have not had an opportunity to address these issues since they were raised in Defendant's Reply [#36].   The consideration of this evidence does not, however, change the outcome on the Motion [#31].

benefits of its services to sellers of real estate in promotional material and on its website. *Id.,* Ex. G, Seller Benefits.   Defendant again asserts in response that it is undisputed that Plaintiffs never saw these representations before the litigation.

In June 2017, prior to the incident in question regarding Plaintiffs' home, an individual impersonating real estate agent Clifford Johnson gained access to another home in the Denver Metro area after calling CSS to obtain showing instructions, and burglarized it.   CSS knew about this incident, and Plaintiffs assert that CSS was thus aware that individuals who were not authorized real estate agents could conduct "showings" of its listings.   *Resp.* [#35], Ex. 6.   While Defendant disputes the latter assertion, stating that this is Plaintiffs' counsel's argument about the meaning of the fact, the Court disagrees. CSS's knowledge of the undisputed events demonstrates at least implicit knowledge that individuals who were not authorized real estate agents could gain entry to properties purportedly protected by CSS.

CSS allowed two different profiles for the same real estate agent, Clifford Johnson, to be created in 2017.   *Resp.* [#35], Ex. 6. at CSS 95-96.   Further, on May 4, 2019, an inbound caller to CSS was able to schedule eight separate showings, including one at the Boston House, without ensuring the caller was a real estate agent.   While Defendant asserts that the latter fact is immaterial because Plaintiffs testified that they were unaware of any other similar incidents apart from the 2017 and 2019 incidents (see Motion [#31]*,* Ex. A, David Cagwin Dep. at 34:25-35:9; *Resp.* [#35] Ex. E, Michelle Cagwin Dep. at 29:13-22), Defendant does not dispute that these showings occurred without CSS verifying that the caller was a real estate agent.

CSS did not follow procedures and protocols before providing the lock box code to the Boston Home on May 4, 2019.   CSS did not verify whether the caller was with Mr. Johnson's office or brokerage firm, and did not ask for Mr. Johnson's showing code.

Plaintiffs' real estate agent, William Swartz, reviewed CSS marketing materials, the CSS website, and attended trainings where the CSS service was discussed.   *Resp.* [#35], Ex. 3, Swartz Aff. at ¶ 3.   Based upon the CSS marketing materials, the CSS website, trainings, and CSS's other marketing efforts, Mr. Swartz believed CSS's representations that the service was safe and would allow only licensed real estate agents to access homes during showings.   *Id*. at ¶¶ 4-5.   As a result, Mr. Swartz testified that he used the services and passed information on to his clients about the safety of the service and how it ensured that only licensed real estate agents could obtain access to the house for showings.   *Id*. at ¶¶ 6-7.

David Cagwin testified that he thinks it is deceptive when a business says it is going to provide a safe and secure service and it does not.   *Resp.* [#35], Ex. 9, David Cagwin Dep. at 116:14-24; *see also* Ex. 10, Michelle Cagwin Dep. at 74:11-22 (17 (testifying that the marketing materials stating "[e]nhanced safety and security for agents and sellers" was deceptive).

Plaintiffs believed that the people who were viewing the Boston House on the day of the burglary would be accompanied by a real estate agent.   *Resp.* [#35], Ex. 10, Michelle Cagwin Dep. at 72:14-17.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is

to assess whether trial is necessary.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Pursuant to Rule 56(a), summary judgment should be entered if the pleadings, the discovery, affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case.   *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.   *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).   When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."   *Id.* at 671.   If the movant carries the burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in her favor.   *See Anderson*, 477 U.S. at 248.   The nonmovant must go beyond the allegations of the pleadings and provide admissible evidence, which the Court views in the light most favorable to the nonmovant.   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### III.   Analysis

### A.   CCPA Claim

To state a claim for violation of the CCPA, a plaintiff must establish five distinct

elements: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) that the practice significantly impacted the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.   *See*, *e.g., Hall v. Walter*, 969 P.2d 224, 234-35 (Colo. 1998); see also Colo. Jury Instr., Civil 29:1 (providing a functionally indistinguishable recitation of these elements).   All of these elements must be satisfied to state a CCPA claim.   *Id.*

Defendant CSS argues that it is entitled to summary judgment on the first, third, and fifth elements of Plaintiff's Deceptive Trade Practices/Consumer Protection Act ("CCPA) claim.   Mot. [#31] at 7, 20, 22.   Specifically, Defendant contends that, as a matter of law: (1) no deceptive trade practice occurred; (2) any alleged harms that occurred were private in nature and did not affect the public; and (3) Defendant's challenged practice did not cause Plaintiff's alleged injury.   *Id.*   Defendant does not contest the second and fourth elements, that the challenged practice occurred in the course of its business or that the Plaintiffs suffered an injury in fact to a legally protected interest.

Conversely, Plaintiffs assert that summary judgment would be inappropriate on the first, third, and fifth elements of their CCPA claim, as genuine issues of material fact exist as to each element.   *Resp.* [#35] at 8, 11, 17.   Namely, Plaintiffs posit that: (1) Defendant's trade practices were deceiving to consumers, including Plaintiffs; (2) Defendant's practices significantly impacted the public; and (3) Defendant's practices

caused Plaintiffs' alleged injuries.   *Id.*

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that summary judgment is appropriate on the CCPA claim, as Plaintiffs have failed to satisfy the first and fifth elements of a CCPA claim.[5]   Accordingly, the Court turns to those elements.

### 1.   Element One: Unfair or Deceptive Trade Practice

Defendant argues that "Plaintiffs cannot succeed on their CCPA claim because, as a threshold issue, they cannot establish that CSS was engaged in a deceptive practice." *Mot.* [#31] at 7.   Under the CCPA, it is a deceptive trade practice to "[e]ither knowingly or recklessly make[ ] a false representation as to the characteristics . . . uses, [or] benefits . . . of services . . . ."   Colo. Rev. Stat. § 6-1-105(1)(e).[6]   Within the context of the CCPA, "a false representation must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers."   *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 147 (Colo. 2003) (en banc).   Further, a plaintiff may demonstrate that a deceptive trade practice occurred by establishing that the misrepresentation "had the capacity or tendency to deceive, even if it did not."   *Id.* at 148.

---

[5]   Because the CCPA claim is resolved by analysis of the first and fifth elements, the Court need not address the third element.

[6]   The CCPA provides numerous definitions of unfair or deceptive trade practices.   *See generally* Colo. Rev. Stat. § 6-1-105(1).   Defendant appears to rely on the formulation listed in subsection (e), whereas Plaintiffs apply the text of subsection (g).   *Compare Motion* [#31] at 7 *with Response* [#35] at 8-9.   Colo. Rev. Stat. § 6-1-105(1)(g) states that a deceptive trade practice occurs when one "[r]epresents that . . . services . . . are of a particular standard, quality, or grade" when one "knows or should know that they are of another."   Given that the issue here is whether CSS knowingly or recklessly misrepresented the safety of its showing service, it is inconsequential whether the safety was a "characteristic" of the service as defined in subsection (e), or a "standard, quality, or grade" of the service as provided for in subsection (g).   While the Court applies subsection (e) to its analysis, the same result would occur under subsection (g).

Plaintiffs assert that "material factual disputes remain as to whether the statements made by CSS had the capacity or tendency to attract customers or 'had the capacity to deceive the recipient even if it did not.'"   *Resp.* [#35] at 8.   Specifically, Plaintiffs contend that CSS represented that: (1) "its service automatically identifie[s] the real estate agent calling;" (2) "the customer service representative verifies they have the correct account to ensure only authorized agents can conduct showings on listings;"[7] (3) "all changes are tracked, recorded, and stored for future reference;" and (4) "the service provides enhanced safety and security for both agents and sellers."   *Id.* at 9.   According to Plaintiffs, CSS's failure to abide by these representations concerning the incident in question constitutes a deceptive trade practice, as such representations have the capacity to deceive consumers, regardless of whether Plaintiffs actually relied on such statements.   *See id.* at 8-9.

Thus, in Plaintiffs' view, summary judgment is inappropriate because disputed issues remain as to whether CSS's statements had the capacity to deceive consumers as to whether only authorized persons can schedule and conduct showings of homes, among others.   *Resp.* [#35] at 8-9, 18-19.   Plaintiffs assert that the very case relied on by Defendant, *Rhino Lining*, establishes that a deceptive trade practice can be established if representations had the capacity to deceive the recipient, and that Defendant "incorrectly claims that it is a requirement that Plaintiffs be 'induced' into using

---

[7]   Defendant asserts that this and other disputed facts are a "brand new, heretofore unarticulated theory of liability under the CCPA[,]" and characterize Plaintiffs' inclusion of these facts in their Response [#35] as an "illicit attempt to *de facto* amend their Complaint" in violation of Fed. R. Civ. P. 15.   *Reply* [#36] at 3-4.   Notwithstanding Plaintiffs' introduction of additional evidence, the Court does not consider this a new theory of liability, as Plaintiffs generally pled this theory in their Complaint.   *See Compl.* [#4] ¶¶ 9-10, 16-17, 40.

CSS by statements made by the company."   *Id.* at 18.

Defendant CSS argues that summary judgment is appropriate.   The undisputed facts demonstrate that Plaintiffs were not recipients of CSS's advertising or marketing statements and were never induced by those statements because David and Michelle Cagwin did not see them prior to retaining Mr. Swartz as their listing broker or prior to the incident.   *Motion* [#31] at 8; *Reply* [#36] at 8-9.   Defendant further asserts that the undisputed facts indicate that all the information Plaintiff Michelle Cagwin had about CSS prior to the incident in question involving the burglary of their Boston Property came from Mr. Swartz, and that all information Plaintiff David Cagwin possessed about CSS came from his wife.   *Id.*   Additionally, Defendant notes that Plaintiffs hired Mr. Swartz not because he used CSS's services, but because of their "longstanding familiarity with him by merit of family and friends."   *Mot.* [#31] at 8-9.   Lastly, Defendant points out that Plaintiffs continued to use CSS's services after the incident in question, thereby placing their "reliance regarding the ongoing safety of their house . . . upon Mr. Swartz['s] representations that he would be present at future showings, not CSS's statements."   *Id.* at 9.   Thus, according to Defendant, Plaintiffs cannot show, as a matter of law, that CSS either induced Plaintiffs to use their services or had the capacity to deceive them, as Plaintiffs had no awareness of CSS's statements prior to the incident and continued to use CSS's services after the incident.   *See id.*

The Court agrees with Defendant.   Even viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs did not know of, and were not recipients of, CSS's statements in its marketing materials, advertising, or other materials

prior to the incident in question or even prior to suit   The undisputed facts also demonstrate that: (1) Plaintiffs hired Mr. Swartz based on his reputation, not his use of CSS's services; (2) Mr. Swartz is not an agent or employee of CSS and was not authorized to make representations on CSS's behalf; and (3) Plaintiffs did not enter into any agreement with CSS for use of its services or with Mr. Swartz related to his use of CSS's services.   *Mot.* [#31] at 3-4; *Resp.* [#35] at 3.   It follows, then, that Plaintiffs could not have relied on or been induced to act by CSS's statements, as they did not receive the marketing statements and had no awareness of them.   *See Rhino Linings,* 62 P.3d at 147, 149 (holding that a "representation . . . is a false or misleading statement that induces the recipient to act or refrain from acting[,]" that "[a] party may establish a deceptive trade practice by proof that a defendant knowingly made a misrepresentation that induces a party's action or inaction[,]" and that the record could not support a finding of a deceptive practice without a finding that the dealer contract at issue was entered into "because of Rhino's false or misleading statements").

Plaintiffs' argument that CSS's statements nevertheless had the capacity to deceive Plaintiffs fails.   As Plaintiffs would have it, so long as CSS's statements had the capacity to deceive *someone*, an unfair or deceptive trade practice occurred.   *See Resp.* [#35] at 8-9.   However, the inquiry is not whether the representations were deceptive in the abstract—the inquiry is whether Plaintiffs received representations which deceived or had the capacity to deceive them, and whether this induced them to take action.   *Rhino Linings*, 62 P.3d at 147-49.   This question must be answered in the negative in this case, because Plaintiffs have not shown they received the statements at issue or were induced

to take action because of same.   Assuming, *arguendo*, that CSS's statements were deceptive in nature, Plaintiffs fail to explain how the statements had the propensity to mislead them when they had no knowledge of the statements in the first place.   Put differently, one cannot be actually or potentially deceived by representations of which they are not aware.

To the extent Plaintiffs rely on Mr. Swartz's representations about CSS, there is no evidence that Mr. Swartz relayed the specific representations that Plaintiffs rely on in CSS's marketing and other materials to Plaintiffs.   Mr. Swartz states as to this issue that it was his "habit and routine practice to speak with clients . . . about CSS' service generally and explain that the service was safe to use and ensured that only licensed real estate agents could schedule and access a home during showings."   Ex 3, Swartz Aff. ¶ 7.   This does not show, however, that Mr. Swartz informed Plaintiffs of any specific statements by CSS.   It only shows that Mr. Swartz may have given Plaintiff some general information about CSS's services and his opinion that it was safe. *See id.* at ¶¶ 6-7.   Moreover, there is no evidence that any purported statements of CSS that may have been relayed from Mr. Swartz to Plaintiffs induced them to take action.

Plaintiff argues, however, that the Colorado Supreme Court has determined that CCPA claims are actionable even where misrepresentations are made to third parties *Resp.* [#35] at 18 (citing *Hall*, 969 P.2d at 230, 235, 238).   *Hall* involved the sale of subdivided lots to the public where developers made false representations to third-party buyers about an access road that caused them to believe they had rights to use the road and to trespass on the plaintiffs' property.   *Id*.   *Hall* is distinguishable.

As the Colorado Supreme Court explained, *Hall* found that a misrepresentation made to a third party may be actionable under the CCPA only "in some circumstances." *Rhino Linings*, 62 P.3d at 149 (citing *Hall*, 969 P.2d at 230).   In *Hall*, suit was permitted because the defendant-developers' representations to third parties caused injury to the plaintiffs, giving them standing even though they had no contractual relationship with the defendants.   *See Rhino Linings*, 62 P.3d at 150.   That is not the situation here, since there is no evidence that Plaintiffs hired Mr. Swartz to list their home or took any other action prior to the incident at issue based on any CSS statements or information about CSS that he may have relayed to them.   Moreover, there is nothing in *Hall* or other authority cited by Plaintiff which indicates that a third party's representation to a plaintiff about the content of a defendant's statements could be imputed to a defendant for purposes of a CCPA claim.   Finally, the *Hall* case did not specifically address whether a plaintiff asserting a CCPA claim must receive the false representations at issue and whether those representations must induce a plaintiff to act.   That issue was addressed later by the Colorado Supreme Court in *Rhino Holdings*, which made clear that the plaintiff must have been a recipient of, and have taken action, "because of [the defendant's] false or misleading statements."   *Id.*, 62 P.3d at 147, 179.

Based on the foregoing, the Court finds that the first element of a CCPA claim has not been satisfied.   As the Court has found that Plaintiffs had no knowledge of and were not induced to act by any statements of CSS, the Court need not address whether CSS's marketing statements constitute puffery as argued by Defendant.

> **2.**   **Element Five: Cause of Plaintiff's Injury**

For similar reasons, the Court finds that the evidence, even when viewed in the light most favorable to Plaintiffs, creates no genuine issue of material fact regarding whether CSS caused Plaintiffs' alleged injuries.  As Defendant points out, Plaintiffs fail to account for how CSS could have caused Plaintiffs' injuries when Plaintiffs had no knowledge of any of CSS's statements in its marketing/advertising materials about the safety or security of its service relative to the showing of homes.  *Mot.* [#31] at 22.  *See Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1114 (D. Colo. 2018) (finding that the plaintiff did not demonstrate any casual connection between the defendant's allegedly deceptive trade practice and the plaintiff's alleged damages where the plaintiff, as the beneficiary of the life insurance policy at issue, "did not allege that the decedent saw or relied upon any deceptive information before he completed his life insurance application").

Plaintiffs again point to Mr. Swartz's affidavit that he reviewed CSS's website and marketing materials and that the information he "obtained led him to relay information to his clients about the service and, in turn recommend that his clients use the service." *Resp.* [#35] at 17 (citing Ex. 4); Ex. 3, Swartz Aff. ¶ 7.  This argument is rejected for the same reasons provided in the previous section.  Moreover, the fact that Mr. Swartz provided a general explanation of CSS's services to Plaintiffs is inconsequential considering it is undisputed that: (1) there is no evidence that Mr. Swartz relayed the actual content of the marketing or other materials of CSS that are at issue, or in fact that he relayed any specific statements of CSS to Plaintiffs; (2) Mr. Swartz is not an agent or employee of CSS, and Plaintiffs have cited no evidence or authority that he may make representations on its behalf or that his statements can be imputed to CSS; and (3) there

is no evidence that Plaintiffs entered into any agreement with CSS for use of its services or with Mr. Swartz related to his use of, or representation of, CSS's services. *See Mot.* [#31] at 3-4; *Resp.* [#35] at 3. The exhibit Plaintiffs cite to, Exhibit 4, does not support their argument as it is simply an undisclosed, undated, archived webpage from 2016 which appears to have been only recently accessed (as of July 31, 2021).

Plaintiffs also assert that Mr. Swartz's communications with Plaintiffs about CSS and his recommendation to use the service resulted in Plaintiffs' use of the service when their home was listed for sale. *Resp.* [#35] at 17. Again, this is inconsequential. It is undisputed that Plaintiffs hired Mr. Swartz based on his reputation, not his use of CSS's services; thus, CSS's statements did not induce any action on the part of Plaintiff.

Accordingly, the Court finds that no material fact is in dispute regarding the causation element of the CCPA claim, and judgment in Defendant's favor is appropriate on this claim. The Motion [#31] is thus **granted** as to the CCPA claim.

## B. Third-Party Beneficiary of Contract

Defendant further asserts that summary judgment should be granted on Plaintiffs' Third-Party Beneficiary of Contract claim. *Mot.* [#31] at 24-25. Specifically, Defendant contends that Plaintiffs were neither express nor implied beneficiaries of the contract between CSS and HomeSmart Realty ("HomeSmart"). *Id.* at 24. According to Defendant, nothing in the single page agreement between CSS and HomeSmart evinces intent to include Plaintiffs as beneficiaries of the contract. *Id.* at 24-25.

Conversely, Plaintiffs posit that "the circumstances surrounding the contract between HomeSmart and CSS demonstrate clear evidence of an intent to benefit the

Plaintiffs as sellers of real estate." *Resp.* [#35] at 19.   Plaintiffs highlight that CSS advertises its services to real estate professionals and individual sellers alike.   *Id.* at 19-20.   Plaintiffs further stress that the benefits of CSS's services, even when used by real estate professionals and brokerages, also extend to individual sellers.   *See id.* at 20.   Lastly, Plaintiffs point to the fact that individual sellers receive text message updates from CSS about scheduled showings, even when no contract exists between the individual sellers and CSS.   *Id.*

Contract interpretation is a question of law, and the primary goal of the court is to determine and effectuate the intention and reasonable expectations of the parties. *Copper Mountain., Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696-97 (Colo. 2009) (en banc) (citations omitted).   "A third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party."   *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App. 1996) (citing *McPheeters v. McGinn, Smith and Co.*, 953 F.2d 771, 773 (2d Cir. 1992)).   Intent to benefit a third party "must be apparent from the construction of the contract in light of all surrounding circumstances, and the intent of the parties is the key inquiry when determining whether a nonsignatory is a third-party beneficiary entitled to enforce the agreement."   *Id.* (citing *O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 901 (10th Cir. 1992)).

"[I]t is not necessary that the third party be specifically referred to in the agreement. It is sufficient if the claimant is a member of the limited class that was intended to benefit

from the contract." *Smith v. TCI Commc'ns, Inc.*, 981, P.2d 690, 693 (Colo. App. 1999) (citations omitted).   While not always dispositive, courts generally rely heavily "on the existence or nonexistence of express terms in an agreement that refer to certain classes of nonparties when determining whether parties intended their agreement to directly benefit certain classes of nonparties."   *Chandler-McPhail v. Duffey*, 194 P.3d 434, 438 (Colo. App. 2008).

Here, even viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have not met their burden in showing that they were intended third-party beneficiaries to the contract between CSS and HomeSmart.   The agreement between CSS and HomeSmart is one page in length and makes no mention of individual sellers.   *See* Ex. 6 at 1.   Simplified for clarity, the contract essentially details a business agreement between CSS and HomeSmart by which HomeSmart agrees to enroll its agents with CSS and to show all current and future listings through CSS.   *See id.*   The only clause that potentially alludes to individual sellers is a passage discussing the amount HomeSmart must pay CSS for each property listing—a vague and tenuous connection at best.   *See id.*

Even when viewing the agreement in light of all surrounding circumstances, there is no evidence that either CSS or HomeSmart intended to distinguish individual sellers as a limited class of third-party beneficiaries.   Plaintiffs' assumption that the signatory parties intended this contract to apply to every individual seller does not comport with standards of reasonableness.   Indeed, given the relative simplicity of the express contract terms and the substantial number of agents and property listings involved, it

would be reasonable for CSS and HomeSmart to expect the opposite in order to promote efficient business practices and limit potential liability.  While individual sellers like Plaintiffs may benefit from the contract between CSS and HomeSmart, the Court finds, based upon the agreement and the surrounding circumstances, that any such benefit accrued by individual sellers is merely incidental.

Accordingly, the Motion [#31] is **granted** as to Plaintiffs' Third-Party Beneficiary of Contract claim.  Judgment as a matter of law in favor of Defendant on this claim is appropriate.

## IV.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that Defendant Centralized Showing Service, Inc.'s Motion for Partial Summary Judgment [#31] is **GRANTED**.  Judgment as a matter of law shall enter for Defendant and against Plaintiffs on the Deceptive Trade Practices/Consumer Protection Act and Third-Party Beneficiary of Contract claims.

Dated:  March 30, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge